## SUPREME COURT — APPELLATE DIVISION — FIRST DEPARTMENT.

### February 15, 1918.

### THE PEOPLE v. FRANK REILLY.

(181 App. Div. 525.)

ASSAULT—REVERSIBLE ERROR—ADMISSIBILITY OF STATEMENTS TO DISTRICT ATTORNEY BY DEFENDANT INDUCED BY PROMISE THAT THEY WOULD NOT BE USED AGAINST HIM ON THE TRIAL.

Upon the prosecution of a defendant for an alleged assault with a loaded pistol, it is reversible error to permit his examination by the prosecuting attorney over his objection and exception as to prior statements made by him in answer to questions by said attorney after being assured by the prison chaplain that anything he said would not be used against him, where such statements materially contradicted his testimony as given on the trial, and tend directly to connect him with the crime.

APPEAL by the defendant, Frank Reilly, from a judgment of the Court of General Sessions of the Peace in and for the County of New York, Part V, rendered against him on the 22d day of December, 1916, convicting him of the crime of assault in the second degree.

*Edward J. White* of counsel (*Lewis Stuyvesant Chanler*, attorney), for the appellant.

*Don Carlos Buell* of counsel (*Edward Swann*, District Attorney), for the respondent.

LAUGHLIN, J.:

The indictment contains two counts for assault, one in the first and the other in the second degree, both charging the defendant with an assault upon one Tynan with a loaded pistol.

The assault occurred in the early morning of September 23, 1915, at the Manhattan Casino at a picnic given under the auspices of a political association. The evidence is uncontroverted that there were discharged one or more firearms in the barroom on that occasion and that Tynan was shot three times, and that immediately thereafter Police Officer Dapping, who with other officers was hurrying from the dance hall into the barroom where the first shots were fired, was shot and killed by one Bambrick, who was subsequently tried, convicted and electrocuted therefor. The defendant and one Schuman and others had been indicted and convicted in New Jersey on a charge of having in their possession in an automobile in that State a concealed weapon, and their conviction had been affirmed on appeal. The defendant had induced a friend of his to become bondsman for himself, Schuman and others, and about a week prior to the shooting had surrendered Schuman. This, it appears, embittered Schuman and he threatened the life of the defendant and intimated that it might be taken by others. There is evidence also of an attempt on the part of some of Schuman's friends, after he was so surrendered, to shoot the defendant prior to the shooting affair in question. Tynan was a friend of Schuman. The evidence tends to show that the defendant was aware of this and that he and Tynan had some words when they met at the Casino shortly before the shooting, and that there were many friends of Tynan and Schuman and of the defendant at the picnic, and that one Quinn, a former police officer, who overheard conversations indicating that trouble was brewing, undertook to allay it and requested Tynan and his friends to bury the hatchet and to meet and shake hands and have a drink together, and induced the defendant to enter the barroom for that purpose. As they were about to have the drink the shooting took place. Tynan claims that after some words passed between him and the defendant he was shot three times, and although he did not see the revolver in the hands of

the defendant he saw the flashes of the discharge, indicating that it was in his hands. No other witness testified to seeing the defendant fire the shots, but several witnesses testified that they saw the revolver in his hand immediately after they heard the reports, and Quinn says that immediately after he heard the shots he took the revolver from the defendant and threw it on the floor. A fully loaded revolver was subsequently found on the floor in the vicinity of the shooting. There is other evidence that the defendant, when outside the building while endeavoring to escape after the shooting, had a revolver and with it threatened an officer who was endeavoring to arrest Bambrick. The defendant took the witness stand in his own behalf and testified that he had no revolver on that occasion, and that as he turned around he saw Tynan pointing a pistol at him and immediately grappled with him and wrested the pistol from him and threw it on the floor, and that he could not see whether it was discharged during the struggle. The testimony of the defendant was in substance the same as a statement he made to the officer who arrested him some months after the shooting. The evidence is ample to sustain the conviction, and we would unhesitatingly approve the finding of the jury were it not for an error committed on the trial which cannot be overlooked without encouraging the commission of like errors on the trial of criminal causes.

It appears that after the arrest of the defendant on this indictment, Father Cashin, the chaplain at Sing Sing, called at the office of the district attorney with a view to obtaining evidence to assist Bambrick, who had been convicted, in an application for executive clemency, and the defendant was brought to the district attorney's office and, in the presence of Father Cashin, was interrogated by Assistant District Attorney Dooling. After he had been asked some questions, the assistant district attorney said to him, " Nobody wants to embarrass you, Reilly; you are free to say anything you choose. I am not

going to urge you to say a word. It is for you to say whether you will help or not." To this statement of the assistant district attorney the defendant responded, " I have nothing to say." Father Cashin thereupon asked Mr. Dooling if he might speak to the defendant, and Mr. Dooling assented. Father Cashin then addressing the defendant said, " In my experience of four and a half years I have had many experiences with the district attorney's office and I have always found them to be eminently fair, particularly during the present administration — there is no danger of any statement you may make now being used against you. We only desire to help you." The defendant was then asked by Mr. Dooling whether he preferred to wait the arrival of his counsel, who had been summoned, and he answered, " I prefer to go right on." It further appears that the district attorney at some stage of the interview before the examination proceeded, but the precise order is not given, also asked the defendant, " Do you feel that you are willing to answer any questions that I may put to you, or do you feel that might prejudice you ? " and the defendant answered, " I have nothing to prejudice me. I am willing to answer any questions I can." Counsel for the defendant appeared during the interview, and the proceedings before his arrival, which had been taken down in shorthand, were read to him, including the statement made to the defendant by Father Cashin, and his counsel made no objection and the examination continued. At the outset of the cross-examination of the defendant on the trial he was asked whether he made a statement of the shooting as it occurred that night when he was arrested and brought before the chaplain from Sing Sing and some of the assistants in the office of the district attorney at the time Bambrick was asking for executive clemency, and he answered in the affirmative. Objection was duly interposed by counsel for defendant to his being interrogated concerning that statement. The court directed that the jury retire, and the competency of the cross-examination with

respect to the statement was discussed between the court and counsel. The assistant district attorney had the statement, which was typewritten and evidently quite lengthy, for during the subsequent examination of the defendant concerning it reference was made to pages, and there is one reference to page 18 Counsel for the defendant did not predicate his objection on the ground that the statement constituted a confession, and he expressed the opinion that it was not a confession, although he declined to take the responsibility of making that as an admission. The court was of the opinion that the statement did not constitute a confession and that, therefore, it was competent for the assistant district attorney to interrogate the defendant concerning admissions contained therein which tended materially to contradict his testimony given on direct examination. The jury returned, and the assistant district attorney proceeded to interrogate the defendant, reading the questions and answers from the typewritten statement and asking the defendant whether he was asked the questions and made the answers. He was not asked concerning the entire statement, and none of it was formally introduced in evidence. It is to be inferred that he claimed in that statement, as he testified on the trial, that Tynan had the revolver and that he wrested it from him. The assistant district attorney read from page 18 of the statement four questions and answers, as follows: " Q. Did it go off at all ?    A. There was shots fired and I could not tell where they went.    The first shot went through me just like that (indicating in a diagonal direction).    Q. You mean while you were struggling with this man for the possession of the gun it went off ? A. Yes, I got it with that hand and it went off.    Q. Did it hit anybody ?    A. I don't know.    Q. Did you see anybody fall ? A. No. sir; I was too excited."    He then asked the defendant whether he was asked those questions and made those answers, and the defendant answered, " I don't remember."    He was then asked whether his memory was better at the time of the

trial than it was at the time he made the statement, and he answered that it was. He further said in answer to a question by the assistant district attorney that he did not know whether he made those answers or not, but that if he did they were not true. He was asked why he made them if they were not true, and he answered that he did not remember making them; and when further pressed as to why he made the statements if they were not true, he said that he did not know what he was talking about at that time, but that he did not tell the district attorney and Father Cashin that he did not know what he was talking about. He further testified that after he was asked a few questions Mr. Dooling stated that he was not telling the truth, and that then he protested and said no more " until after Father Cashin " gave him a " guarantee that anything " that he said " would not be used against " him at his trial, and that he then said he did not care whether he talked or not. He further said that he was confused owing to the fact that he was interrogated by Mr. Dooling, Father Cashin, by another lawyer and by a detective. That the assistant district attorney regarded the conflict between the statement and the testimony given by the defendant as very material is shown by his lengthy cross-examination of the defendant concerning it. We are of opinion that this examination of the defendant, which was had over his objection and exception, was incompetent. Assistant District Attorney Dooling, in effect, adopted the statement of the chaplain, and the legal effect thereof is precisely the same as if the statement had been made by the assistant district attorney. There was, therefore, in view of the statement and of the testimony of the defendant, which extends it somewhat, a clear representation made to him to induce him to talk that anything he said would not be used against him on the trial of the indictment under which he was then in custody. The statements shown by the formal typewritten statement to have been made by the defendant materially contradict his testimony as given

on the trial, for they indicated that the revolver was discharged during the struggle, and to that extent corroborated the complaining witness that he was shot by a revolver held by the defendant. Of course, the statement was not a complete confession of the crime with which the defendant was charged, but it contained material admissions against him which tended directly to connect him with the crime. We do not understand that the competency of statements obtained from a defendant in custody under indictment by coercion or promises or other inducements depends on whether or not the statements constitute a complete confession of the crime with which the accused was charged within the provisions of section 395 of the Code of Criminal Procedure. We think the Court of Appeals in People v. Kennedy (159 N. Y. 346) intended to make it clear that statements so obtained cannot be used in any manner against the accused. The court there promulgated the rule for the guidance of prosecuting officers, as follows: " In passing it may be proper to observe that, when officers charged with the enforcement of the law, through undue zeal or an inordinate desire to obtain evidence to convict, by covert threats, doubtful and uncertain promises, acts of intimidation or other questionable means, procure incriminating statements from persons subsequently charged with crime, they are inadmissible, as they would be regarded as involuntary and not made without inducement or practical compulsion. The reception in evidence of statements thus obtained might well be a ground for reversal. Therefore, district attorneys and other executive and administrative officers should remember that to be admissible statements made by one charged with or suspected of crime must be voluntary, fairly obtained, and not procured by inquisitorial compulsion or other improper means. When properly procured they may be of value and employed as evidence against the person making them, but if procured otherwise they are not admissible, and a judgment influenced by such evidence would require re-

versal." Under those rules, the rights of the defendant were violated to his prejudice.

It follows, therefore, that the judgment should be reversed and a new trial ordered.

SCOTT, DOWLING, SMITH and DAVIS, JJ., concurred.

Judgment reversed and new trial ordered. Order to be settled on notice.